1-10122, Brucker versus the City of Doraville. 1-10122, Brucker versus the City of Doraville. Mr. House, you may proceed when ready. May it please the Court. Doraville is an outlier. Most cities do not rely on guilty convictions for up to a third of their budgets. Most cities do not add $25 fees to those convictions to pay for basic city services. And most cities do not advertise to their constituents how many millions of dollars this brings into the city. So when a defendant enters Doraville's court, he sees a court that must convict him in order to balance the city's budget. That defendant does not receive due process in Doraville's court. Under Toomey and under Ward, this case turns on whether Doraville has a financial interest or appears to have a financial interest in guilty convictions so substantial that it violates due process. And here, everyone recognizes that if Doraville's mayor were the judge of this court, that that would be the exact facts of Ward versus the Village of Monroe Bill and would be unconstitutional. But Doraville cannot avoid that conflict of interest by simply hiring an at-will employee to be the city's judge and adjudicate disputes in its municipal court. Nothing in Ward. Why not? I mean, is there some kind of due process requirement that the judge that adjudicate the dispute have life tenure? No, not at all. OK, what does the due process clause require that the judge have such that the judge is insulated from the folks who get to spend the money? That would come in through the judge's court? Of course, well, it's what the due process clause requires the judge doesn't have, which is that conflict of interest. And so where does that come from? It comes from- And that's what I'm confused about. So you say the judge has a conflict of interest because, basically, he works for the city. The city gets the money that is generated by the judge's courtroom. Therefore, he has a conflict of interest. We work for the federal government. The federal government gets the money that's generated by a courtroom. Actually, the Article III is self-funds. What's the difference? Well, the difference is that the agency that funds you, which is, I suppose, Congress, can't get rid of you if it doesn't like your decision. And so is that the due process requirement that the judges have life tenure? Well, it doesn't have to be life tenure. There are all sorts of ways in which a judge could be insulated. And so you see, by contrasting, for example, the Toomey case and the Ward case with Dugan, you can see that insulation in practice. In Dugan, which the court approved of the mayor's court system, in Dugan, the judge was one of the commissioners on the city council, but he only did adjudicative tasks. He had no executive responsibilities, and he was elected. He was elected like those various commissioners. So you basically had an elected judge. Doroville had an elected judge who could not be removed by the exact same people who are responsible for Doroville's finances. That would remove the conflict. So there are really two conflicts at issue in this case. One is institutional. So let me just sort of follow up before we get too far afield here. I mean, so not life, I mean, you know, even if we were to rule for you, we do have to write an opinion. So not life tenure, but like some structural guarantees of independence. And I think we're trying to figure out like what that looks like. Well, of course, I think this is the minimal structural guarantee. I suppose what we have here, right, is that there are no guarantees and that this judge just serves the city's pleasure. But there are all sorts of ways in which the court could run and not have this. So I mean, one way to get rid of the conflict of interest, of course, would be to sort of not allow the city to remove the judge whenever it wants, to have the judge be elected. Of course, there's nothing forcing Doroville to depend on fines and fees. As the city testified multiple times, they could send all these prosecutions to state court. There's no even requirement it have a municipal court. But as long as it has a municipal court, that municipal court cannot be interested in driving revenue toward the city. Yeah, and I see, I guess that's where, so, and this is, I guess, just a confusion I have about the case in general. On the one hand, you're sort of pointing to an apparent conflict, right, which is like this judge works for the city, the city gets a lot of money, the judge might sort of have an apparent interest, and you're saying, well, you could eliminate that through some kind of mechanism. But on the other hand, you're sort of saying, no, the judge has an actual interest in convicting these people. Which one is it, is it apparent or actual? It's actually, it's both, Your Honor, and that's exactly what happened in Toomey. That's how the Ward Court read Toomey as well. So there is both an institutional bias here in which we are saying, look, this judge, this municipal court employees are just agents of the city council, and the city council has these dual roles of executive and judicial, and those dual roles are conflicting. That's our institutional argument, and that's present. And the city's first, or excuse me, the district court's first error was ignoring that institutional argument angle. But even if you move to the city's employees, and you look at the personal conflict of interest that exists, whether these employees have an interest personally in guilty convictions, the record shows that they do. The record shows that these employees have an interest because the city can fire them at will, the city controls their wages, the city controls their benefits. In fact, the record shows that when city finances dipped, that they cut the judge's benefits in the middle of his employment. And then the city could also, as I mentioned, get rid of its municipal court. Right now, Thoroughville's court returns a healthy profit to the city. But if that were to ever cease being the case, the city could just get rid of its municipal court, and save the money from having to run it. So these employees know that to maintain their livelihoods, that they must continue to convict people in the court, and give the city that revenue. Okay, and so the only way to fix that, I think, is, you're saying, is for the judge to be able to continue to hold some office of judge that comes with some kind of salary for, I guess, a term of years or something that's unrelated to the city, right? So there has to be some kind of independent office that the judge holds that the city has no control over his budget or his salary? That's right, that's exactly right. And again, could be elected judge, could be a appointed judge with life tenure. There are all sorts of ways you can insulate the judges from pressure, from political pressure. Would just sort of for-cause removal satisfy, here I recognize the for-cause issue is a little dicey, because it seems like it's for-cause for 364 days a year, and then it's at will. And then if he's re-opted for-cause for 364 more days, then it's at will. Is that right, do I understand that correctly? Yes, that's correct, Your Honor. So would a for-cause removal protection suffice? Your Honor, I don't think it will. The reason for that, if you look at, it's Georgia Code 36-32-2, or 2.1 is the removal statute. It lists sort of the reasons that qualify as for-cause, and they're incredibly vague. I don't think they satisfy any sort of constitutional standard. It says if the judge can't perform his duties well enough. Well, if the city is telling them that one of his duties is to increase the city's revenue, then we're back at square one. Now, that's an interesting point. And I guess I would view this case differently if there were evidence in the record that said the city council instructed the judge, hey, find more people guilty, we need more money. But I thought the opposite was in the record, is that the city council said, and I mean, this may be self-serving, but it's what they said. They said, no, we never told him that. And he said, no, no one's ever told me that. So are you kind of arguing a case that is not the case that's presented by the record here? No, Your Honor. And like we said, the second problem with the district court's ruling was precisely that it was looking for exactly that sort of evidence. And the Supreme Court has repeatedly said, you do not need to show that that happened. But I do think that that- Well, you just said that evidence existed, though. So you're now retracting that. There is nothing in the record where the city told the judge, hey, you need to rule this way or you're out. I'm sorry, Your Honor. It might've been in my explanation of that statute that I was sort of giving an example. You're just saying this is a hypothetical possibility that the city could say this. Precisely. The incentives exist for the city to say that. And it is the exact possibility that the Supreme Court has said can be unconstitutional, can create this unconstitutional conflict of interest. We do not need to show evidence of that bias in action. But even if you do look at the record, for example, the judge's testimony that I was never told this, I had no idea what the city's finances are, that just doesn't seem to correspond with the actual facts because he testified, I was aware that the city decreased the number of judges I served with when it had financial problems. I was aware that the city took away my health benefits because the city had financial problems. And when the city had financial problems, it came to me to ask for help with going after unpaid warrants. So it's just not believable that this judge, in addition to all of those public pronouncements that Doroville has made about its dependence on these fines and fees, it's simply not believable that this judge is insulated in any way and that he has no idea of his role for the city in creating these revenues. So I think just want to add one more point on the appearance of bias. It doesn't even have to be what the Brown versus Vance court called a conscious bias. It can be an unconscious bias in the sense that the city selects the judge and the city, we know, has this bias for more revenue. And so what can happen is that could leave, even if the judge is completely above board and is never interested in any of these cases, what it could lead to is the city choosing judges who are more plaintiff-friendly or convict more often, and therefore, even unknowingly, are driving more revenues to the city, even if there's no financial interest on their individual parts. Thanks. Judge Branch, do you have any questions? I do. Thank you, Judge Gleeson. So we've talked about some of your proposals for how a judge could be insulated from pressure. And at the outset of your remarks, and certainly in your briefing, you talk about DeKalb County as an outlier for the percentage of revenue on which it's dependent for municipal fines and fees. Is there a permissible percentage of revenue that would cleanse Doraville's due process violation? 5%, 10%, is there a percent that you're arguing for? Yes, Your Honor, and we know there is because this is what the court said to me. The Supreme Court said that if it's a de minimis reliance on this number, then that would not be unconstitutional. And so if you look at what other courts have done, the Ninth Circuit, for instance, in the Alpha Epsilon Phi case said that it was not substantial there, despite there being a conflict, that it was not a substantial one because it was only 3% to 5% of revenues. And even then, there were other factors that it looked at. It wasn't just percentage. It said, look, there's other sources of revenue that the city could use, or that the board in that case could use. It regularly waived fines because it really didn't need them. Those facts are not present here. In fact, Doraville said it doesn't waive fines. The judge said he doesn't think he had the power to waive fines. And of course, here, there's nothing. If you look at our expert report, she details the fact that there are no other sources of revenue that Doraville could easily turn to. It's maxed out its tax rates. And so fines and fees are this easy way for it to have direct control over the amount of revenue it takes in. So you're saying in this case, it's such an outlier, we don't have to talk about what percentage of revenue would be de minimis. You're not asking us to reach a standard. You're just saying, no matter what standard de minimis is, this is an outlier. That's correct, Your Honor. And to the extent that this court does want to dig into that further, Justice, excuse me, Judge Story's opinion below does set forth sort of the 10% number, discusses that that was developed by some courts out of the Sixth Circuit. And so I think there are some references this court can use if it wants to dig into the number more. And one final question from me. I'm assuming, and I haven't found any, that there's any court that has held that a city violated process because its judges were not life tenured or elected or otherwise had no insulation  Correct? That's correct, Your Honor. And that's, to be clear, that's not the only relief that's available here. Again, the problem is Dorival using an interested judge. It could remove the financial interest. If Dorival simply didn't depend on this money, didn't use it to offset its expenditures every year, that would also remove the financial interest so that it could more or less maintain the municipal court system and not have that conflict. So it's not just on the judge or the employee end that this conflict could be cured. The other side of the conflict, which is this financial side, could also be fixed by the city. That's all I have, Judge Newsom. Okay, very well. Thank you very much. You've reserved your rebuttal time. We'll hear from you in a few minutes.  May it please the court. Harvey Gray on behalf of the city of Dorival. Let me address the first question that talked about tenure. I don't think it's the sine qua non of this case, but in 2016, the Georgia legislature passed, adopted a statute that says, as used in this code section, judge means an individual serving as an appointed municipal court judge. That's the judge in this case. A judge may be removed during his or her term of office by a two-thirds vote for the following. One, willful misconduct in office. Two, willful and persistent failure to perform duties. Three, habitual intemperance. D, conduct prejudicial to the administration of justice, which brings the judicial office into disrespute, or disability seriously interfering with the performance of duties, which is or is likely to become permanent in character. Moral. So that standard, which we've read and are familiar with, that standard applies during the 364-day term, right? This is a succession of one-year terms? I think it applies as long as he's in office. So what then, what am I to make of your Rule 36 admission that once his term has expired, you have no obligation, legal or otherwise, to reappoint that same person to the position of municipal court judge? That sounds to me like at the end of the one-year term, we can can him. Well, I think that the statute may preclude that. He may have a claim to that. Well, so then in response to my question, what do I make of that admission in this case? I don't remember that admission, but I wish it wasn't there. I mean, so the way I understood your friend on the other side's argument was that there has to be some period where the judge is insulated while he's judging. And at the very least, you've cited us a statute where for this one-year period, he can get reappointed to additional one-year periods, but for this one-year period, he can't be removed short of doing something that would not be good behavior. And I would note that the statute also provides that it expressly supersedes any conflicting local law in the state. However, let me go to my kind of primary argument here. All of the cases that have been decided are cases that involve the decision maker. In this case, the municipal court judge, every one of them. And all of them consider whether the judge has a direct financial benefit and or executive authority. Then they decide, is the conflict substantial? Is the first part of what you just said true? And I guess I'll confess an affinity to this case called Harper. But in Harper, we didn't really look at individual decision makers, did we? Didn't we just say that the entity, professional probation services, was biased? And we just sort of assumed that its employees were doing its bidding. Well, the employees were doing its bidding, but Harper was a class action and it was a motion to dismiss, is the way I read it. And on a motion to dismiss, which is what we did in this case, on plausibility. Because the only evidence they've ever reduced to support their claims is the amount of fine and fee revenue expressed as a percentage of total revenue. Which, as we know, and it's reflected on their website, easily definable, that percentage is now 7.8%. But the judge, of course, on summary judgment, gave them the benefit of the doubt and said, let's say it was 15% on average. That's still not enough. There is not a shred of evidence that this judge knew about the budget, had any involvement, talked about it in any way, shape, or form. He had no executive authority whatsoever. And so the tenure argument, while I think it's favorable to us, it's not necessary for us to win this case. Could you address something in the facts for me? So your friend on the other side of the case points out that a substantial piece of the city's budget comes from fines and fees overall. But how much is the average fine or fee in an individual case? Well, you have two types of fees. You have traffic court violations in this case. Both of the plaintiffs that committed violations, and there's video evidence of this. It's unquestionable that they were guilty of the offense. One of them paid, I think, 200 and something dollars and the other paid 100. Right, and so how much, so let's just assume it's like $150. Is that a substantial portion of the city's budget, each individual case? No, no. In fact, the code enforcement is roughly 110th of the fines and fees that are at issue in this case. So if it's 15%, then the code enforcement fees are 1 1⁄2% of the total budget. And then each individual case is what do you think, like? Micro. Right, right. Very, very. So, and that's, so I'm very familiar with this case called Caperton from the Supreme Court. And one of the things the Supreme Court said there is that the reason that there's this due process problem is because the case, the Caperton case, Caperton v. Massey, was an important case for Massey who had created this potential conflict. Okay. Is there, you know, in each individual case here, is there any sort of importance to it such that the judge would want to say, well, in this case, you know, I'm going to be biased towards the city? An illegal turn, passing a car without a signal. Those were the two traffic court violations. The entire file of the code enforcement is there. And these, one of them came in and pled no contest, paid a $100 fine, I believe. The other one was assessed a fine, but never paid it. It was never enforced. I guess the flip side though, right, is that it might minimize the unfairness in any one individual case, but might maximize the unfairness across the system as a whole because the judge might think, holy cow, I'm only getting $100 a pop for each of these things, so I need a lot of pops. Well, he has no idea, and the testimony is unrebutted, that he had no idea of what the budget requirements were, what the budget expectations were. Every city is required to prepare a budget. Every city that has a municipal court derives income from those municipal courts. But just to go to Judge Newsom's question, so in his case in Harper, the bias adjudicator was in charge of generating the number of pops too, right? Because they could decide, do we extend probation or not? Does the judge have anything to do with deciding whether someone is prosecuted in his court? No. Right, so he doesn't get to say, well, you know what? I'm really worried about the budget this year. I might lose my job. Let's prosecute some more people so I can convict them unfairly and then get some more money. He doesn't charge anybody with anything. Citations, and I think it's important to keep in mind, these are individual plaintiffs. This is not a class action challenging the systemic bias issue that they've raised. These are four plaintiffs. Two got code enforcement citations. Two had traffic tickets. The traffic ticket folks came in, paid the tickets, paid the fine, didn't raise any constitutional issue, had ample procedural due process. They could remove the case to superior court. They get a de novo trial if they're unhappy with magistrate court. They never raised any constitutional issue, and it's just antithetical to me of everything we know about federal jurisdiction to allow a plaintiff who's convicted in a state court to not raise those issues, not appeal, and then jump into federal court and say, I'm entitled to a damages remedy. I'd like to lay my hands on it, but. Are you suggesting that there's some kind of Rooker-Feldman bar here? Absolutely, absolutely, absolutely. Rooker-Feldman and Humphrey v. Act. I mean, I don't even understand the theory behind jumping into federal court without reversing a conviction that's inextricably intertwined with the argument that you're making here. They're each saying, my citation and the fine I paid violated my 14th Amendment rights, and I want damages for that, and yet their convictions stand, their guilty pleas stand. I don't understand how a federal court would have jurisdiction to assert those claims. We argued that in a pre-answer motion to dismiss. Judge Story said, well, I think there's enough here. I'm very cautious about allowing this case to proceed, but I am, but I'm gonna let it go cautiously. When he was asked to do that on summary judgment, he said, I've already ruled on that issue, and I'm not gonna go back and do it again. So I really don't understand how a damages claim can proceed. We also have, which was my case, Tegan versus the city of McDonough, in which a plaintiff tried to make a 1983 damages claim against a city, McDonough, because of a municipal court judge's rulings in the case, which she argued were unconstitutional, and this court held that a municipal court judge's legal authority is derived from the state of Georgia, not from the municipality, and as a result, he's neither a policymaker nor someone whose acts can be used to support a damages remedy, and I think that has equal application here. They're focusing on a municipal court judge whose authority derives from the state, not from the city, and I do believe that the statute does provide ample safeguards that a judge is not saying, well, I have to generate more income or I'm gonna lose my job, and in fact, those issues, I think it was in Dugan, there was a discussion, well, the judge has a salary, and his continued interest in his salary could be a conflict, and the court said, no, no, it's not. So I think ultimately, there is no standard for what percentage, as Judge Branch inquired about. Their expert said, well, their percentage is higher than it should be as compared to comparable cities, which I defined as cities with a population between five and $15,000. Did not consider location, did not consider proximity to interstate highways, did not consider commuting traffic, compared them to cities, rural cities that might be a one-horse town with one street and two stoplights, as long as they have 5,000 people. She said that if they have a municipal court, their amount of revenue should be comparable to the city of Doralville, and it's unquestionable that the fines have diminished quite substantially. Some of this is probably COVID, but it's now around 7.7% in 2020. So no court has ever held that an inference from the amount of revenue generated in a municipal court translates into a 14th Amendment substantive due process violation, which I've always understood. Can I ask you a quick question? I noticed in your briefs as well, you kept characterizing this as substantive due process. Why is that? And this seems to me like if ever there were like a core procedural due process right, it would be like fairness in the courts. Why is this substantive due process? Well, because I think that the procedure there is notice and opportunity to be heard. They have noticed, they had an opportunity to be heard. They had ample opportunities to appeal their conviction, to contest, to raise constitutional issues. So I don't think procedural issue, procedural due process is implicated here. Let me ask you one further question. So I took your point earlier, one of the distinctions you would draw between this case and Harper, which may be a fair one, is that in here, at least there is some protection for cause firing protection during the term. So for a year, you're safe, then you're not. For a year, you're safe, then you're not. For a year, you're safe, then you're not. And in Harper, the employees, we can presume we're just at will employees year-round. What about salary protection? Is there anything during the term that protects this judge's salary from being diminished, in essence, to zero? I don't know that, don't know the answer to that question. It was never explored, it was never. But let me point out also in the Harper case, which I think is eminently correctly decided, very surprising that the trial judge dismissed it for no color of state law. These employees were acting arbitrarily, capriciously, with no due process, no procedural due process. Nobody, there was no avenue to appeal when they lengthened their sentences. There was no oversight, there was no review of any kind. These employees just willy-nilly decided to extend their probation, impose additional fines, which is a direct benefit case. And I don't see the parallel or the analogy between Harper and this case. This case has no direct pecuniary benefit to the presiding judge. This has- Well, I mean, but Harper, were the employees benefiting in Harper? They were not- Excuse me, that's the parallel. It's private probation services to Doraville. Right. Employees to judge. Well, they were acting as employees and they are, a private corporation is bound by the actions of employees. And the Teagan case says that a city is not bound by the actions of the municipal court judge because their legal authority derives from the state of Georgia, not from the city. Judge Story took this case on, I think, because he was interested in it, because it raises an issue that was intellectually interesting, which it has been. He allowed discovery to go forward. He said, cautiously, we produced well over 50,000 documents, depositions, and their position has never changed. The only thing they hang their hat on is you're collecting money for fines and fees that we think, we can't give you a number, but we think is too high. And that means that there is an institutional bias that violates the 14th Amendment. I don't see it. And Judge Story didn't see it. Judge Story went into exquisite detail, I thought, in analyzing each of the elements in the municipal court system, from code enforcement to police officers to prosecutor and to judge. And I think he came up, he gave them the benefit of the doubt, as he has to do de novo for the damages remedy. Now, we hadn't really talked about the injunctive and declaratory relief, but there's no serious threat of irreparable injury to these plaintiffs. It's five years out. The only irreparable injury that the two traffic court case plaintiffs said is, we might drive through Dorable again and we're scared we're gonna get a ticket. Well, the answer is, don't violate the law. They don't even challenge the probable cause for their tickets. And they pled guilty to both of them. So how are we in this court, having a federal court basically review those judgments for each individual plaintiff and say you're entitled to damages? It just doesn't make any sense. Let me ask Judge Branch if she has any questions for you. I do not. Okay, very well. Thank you so much. Thank you so much. Mr. House, we'll hear from you on rebuttal. Thank you, Your Honor. First, an answer to Judge Brasher's question. So the average fine, according to our expert testimony, and this is at Doc 91.5 at page 14, is about $300, just under $300 per citation. Now, that is much larger, I think, even given inflation than the $50 per citation that was the average in Ward. So if you go back and look at Ward, those traffic violations were only $50 violations. And yet, stacked on top of each other, they were deriving up to 35 to 40%, I think it might have been 50% of the city's revenue in that case. Turning now to the citations or the record evidence about what the judge knew and when, it's simply not correct that there's nothing in the record about the judge knowing about the finances. I recounted the facts already, and so I hate to belabor the court, but just to provide some citations, they're all in the judge's testimony, which is document number 91.7. So if the court would like to review that, you can find where the judge recognizes that when revenues dipped, my employees were cut, which gave me more work to do. When revenues dipped, I lost my health benefits, and so forth. Turning to the jurisdictional issues that my friend brought up, there's no Rooker-Feldman issue here, because this case is about prospective relief. To the extent nominal damages are an issue, there was plenty of time between the convictions of the variety of plaintiffs and this case being filed, where they had to live under this unconstitutional system. So there's simply no Rooker-Feldman issue here. I also want to point out that Plaintiff Brecker, who's here in the courtroom with me today, she doesn't have an outstanding conviction because she got hers vacated. And so there is no conviction for her to have appealed to challenge these things. The Teigen case that my friend brought up, I just want to point out that, and this is at page 10 of our reply brief, in there, the court expressly withheld ruling that a municipal judge could never be acting as a municipal actor. That case was about whether the judge was a state actor or a municipal actor for, I think, purposes of Monell. Again, looking at that case, when the judge is adjudicating local ordinances, which is that issue here, because it's only local ordinances that will return fines and fees to the city, I think it's clear that the judge here is acting as a city employee and a city actor. So all of the plaintiffs here, as well as other people in Doraville, when they appear, they do not get procedural due process because they do not have access to a disinterested adjudicator in the first instance. Ward said that that was an absolute requirement of due process, and that's the lack of procedure, is they're not getting a fair hearing because they're getting a hearing in front of an interested judge. Not every city tickets defendants for having improperly stacked wood or driveways in a state of disrepair, but Doraville does because it needs to do so. Can I ask you a question before you finish? So it struck me in your adversary's argument that there were sort of two distinctions that he was drawing between this case and Harper. One, and again, I'm not sure these are bad distinctions. One is that at least here, there is for cause removal protection during the term. Presumably the employees in Harper were just at will employees year-round, number one. Number two, as Judge Brasher said, in Harper, the employees were sort of both judge, jury, and executioner. That they could sort of drive, as Judge Brasher said, the number of pops. They could find the violations and in effect adjudicate the violations. Here, that there is a division of labor with respect to enforcement and adjudication. So will you address those distinctions for me? Of course. So as for the distinction about at will or not, I mean, the judge of Doraville testified he'd been the judge for 28 years. His one-year term, it expired almost three decades ago. So I don't think that there's much of a distinction between what the system Doraville had and the system of a completely at will can remove you. The judge's term is far over. And I don't think it's- Is there a distinction of one-year terms? I don't think that's in the record at all that there's this automatic renewal. I think that that might have come up at some point in their briefs, but I don't think there's anything in the record that there's some sort of an automatic renewal. And he's just sort of a tenancy at will or something now. That's how I read it, Your Honor. And we cited in a footnote in, I believe, our opening brief, we mentioned that under Georgia law, once the contract's over, you're just sort of at will. There's no guarantee to an automatic renewal of your contract. As for your- Am I wrong, by the way? I'm sorry that I keep interrupting. I just want to make sure I've got all this straight. Am I wrong, by the way, that there is an admission in the discovery in this case that once the term is up, there's no obligation to keep him on? No, you're correct. That admission exists. That's at document 9115 at page five. Okay. All right, so sorry. Continue, I'm so sorry. And Your Honor, I believe Your Honor's second question was about Harper and whether this division of labor in Doraville differentiates it. And I don't think it does because I assume that this company, Professional Probation Services, also has a division of labor where different employees are performing different tasks. The fact is that Doraville has full control over the prosecutor, has full control even of the law enforcement officers that make the decision whether to ticket a particular defendant for having grasped too long or having a driveway in a state of disrepair. And so Doraville does have control over each of those employees, just as Harper would have had control over each step of the probation proceedings. Judge Brasher. Yeah, can I ask a question? To go back to Harper. So in Harper, most of the opinion in Harper is focused on whether this private probation company was performing a judicial function. And Harper concludes, yes, basically, effectively sentencing these people to additional terms of probation is a judicial function that is not performed by the employees of the probation company, but by the probation company itself, right? That's the company that has the contract with the city to do this. Is there a similar argument here that the city itself is performing a judicial function? Because I think the city's position is that, no, that's why we hired this judge to perform the judicial function and we are not performing it. What do you say about that? Yes, our argument is that the city is performing both judicial function as well as a prosecutorial function. Now, of course, the arguments here have focused on the judicial because that's the more stringent standard under due process. But if for whatever reason that weren't persuasive, we think that they also fail the sort of standard of neutrality required for prosecutors. But again, both functions are being done here. And I think it's important to recall from the Harper case that line where the court said, look, the city can't avoid due process or the agent of the city, the company can't avoid due process by simply outsourcing a certain role to a company. I believe it was something about, you can't say that, well, if this entity is doing the adjudicative role, then it's not partial. And if this entity is not doing the partial role, then it can't be adjudicative. And I just don't think that a mere at-will employment relationship can divorce someone of that conflict. I don't think that would pass, for instance, if there were a conflict of interest in attorney representation roles to say, well, I just don't, this person, whoever, whose employee I have complete control over, I'm just gonna have my assistant take this case instead of me and that's gonna cure the conflict. One final question about the at-will employee issue. So in footnote 10 of Harper, which just addresses this sort of uncontroversial position that for 1983 liability, there is no respondeat superior, you know, it doesn't work where you can point to an employee's problem and get the employer liable. We said in Harper in that footnote that there was a policy or practice of this employer in doing this. And so that was reason, that was the way we could get the employer on the hook for what its employees were doing. What would you say the policy or practice is of the city that you are challenging and you are saying that this policy or practice, in however many words, is the thing that is unconstitutional that the city is doing? The policy and practice is the city's heavy reliance on guilty convictions to fund the city. That is the policy and practice. It's done from the top down. It's not an issue of respondeat superior. This is something that is set forth in budget documents. It's something that the city's officials advertise to their constituents that the fines and fees contribute heavily to the city's bottom line. So this is a top down policy. And that's exactly why, if you look at the record, our budgets that we, the city's budgets that we collect go all the way back 10 years because we have to establish that this is a longstanding policy, practice, and custom of the city. We couldn't just point to last year's budget and say this is what's going on. Okay. Judge Branch, do you have any follow up questions? I do not. Okay, very well. Thank you both.